IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | Case No. 12-13316(KG) |
| THE RESERVES RESORT, SPA & | ) | |
| COUNTRY CLUB LLC, | ) | |
| | ) | |
| Debtor. | ) | **Re Dkt No. 141 and 145** |
| _____ | ) | |
| | ) | |
| In re | ) | Chapter 11 |
| | ) | Case No. 12-13317(KG) |
| ABRAHAM P. KOROTKI, | ) | |
| | ) | |
| Debtor. | ) | **Re Dkt No. 112 and 114** |
| _____ | ) | |

## MEMORANDUM OPINION

In these Chapter 11 cases, the Court is opining on motions to convert the cases to cases under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101, *et. seq.* (the "Code"). The grounds asserted are the "for cause" provisions contained in Section 1112(b) of the Code, *viz.*, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation . . . gross mismanagement . . . or unexcused failure to satisfy timely any filing or reporting requirements . . . ." 11 U.S.C. §§ 1112(b)(1), and (4)(A), (B) and (F).

Parties

The Debtors are Reserves Resort, Spa & Country Club LLC ("RRS") and Abraham P. Korotki ("Mr. Korotki") (collectively, "Debtors"). Mr. Korotki is the sole member and manager of entities that involve a real estate development in Sussex County, Delaware,

known as "The Reserves Resort, Spa and Country Club" (the "Development"). The entities include: The Reserves Development Corporation; Reserves Development LLC; Reserves Resort, Spa and Country Club LLC (the "Reserves"); The Reserves Management Corporation; and Reserves Management LLC. Mr. Korotki formerly also controlled STL Development Corporation ("STL") and ST2K, LLC .

Several creditors and the Office of the United States Trustee ("OUST") have moved to convert the cases. On June 12, 2013, the Court conducted an evidentiary hearing on the motions. The Court will limit its discussion of the facts to those which are material and undisputed.

## The Facts

1. Debtors filed their petitions under Chapter 11 on December 10, 2012. The OUST conducted a Section 341 Meeting on January 14, February 5, and February 25, 2013.

2. Immediately upon filing the cases, Debtors filed a joint plan (the "Plan") and disclosure statement (the "Disclosure Statement"). The OUST objected to the Disclosure Statement and the Debtors have not pursued its approval. Mr. Korotki testified at the Section 341 Meeting and has filed the monthly operating reports

3. At the outset of its business, Debtors owned 179 lots in the Development, of which seven lots have been improved and contain single family homes. The Development is divided into four phases.

4. In addition to the seven improved lots, between March 2004 and April 2005, Debtors sold 62 lots to three parties for $7,325,000 and beachfront property valued at $2,500,000. Debtors also mortgaged 22 lots in the Development for infrastructure improvements. Disclosure Statement at 4-5.

5. As of December 1, 2008, Debtors held 105 lots in the Development. On December 3, 2008, Debtors transferred 69 lots valued at $8,625,000, to non-debtor STL, without consideration. Decl. of James O'Malley ("O'Malley Dec.") Then, on January 25, 2009, Mr. Korotki directed his attorney, in writing, to pay to his wife ("Mrs. Korotki") all money received on his behalf and on behalf of Reserves and Reserves Management LLC. The directive remains in effect. Hr'g Ex. 9, U.S. Acquisition.

6. In October 2011, by virtue of a refund from letters of credit, Mr. Korotki received in excess of $400,000 in cash; Mrs. Korotki received almost $900,000. Disclosure Statement at 9.

7. On May 16, 2012, Debtors transferred an additional 14 lots in the Development to STL, again without consideration. The Debtors were left owning 22 lots. O'Malley Dec.

8. At the Section 341 Meeting, Mr. Korotki testified that Mrs. Korotki provides him with maintenance and support. O'Malley Dec.

9. Prepetition, Mrs. Korotki and STL loaned Debtors more than $3,000,000. The parties do not have a written agreement governing the loan. O'Malley Dec. Post-petition, Debtors have received loans from Mrs. Korotki in excess of $1,000 without seeking and

3

obtaining the Court's approval. Monthly Operating Report.

10. Mr. Korotki's source of income consists of Social Security payments and gambling winnings. Mr. Korotki has deposited these funds in a personal, non-debtor account. Hr'g Test.

## DISCUSSION

Section 1112(b)(1) of the Bankruptcy Code provides:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section and section 1104(a)(3), on request of a party in interest, and after notice and hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1) (emphasis added). The statute thus makes conversion mandatory once a court finds, as the Court has done here, any of the elements of "cause." The burden is on the moving party to prove cause by a preponderance of the evidence. *Tradex Corp. v. Morse*, 339 B.R. 823, 829-32 (D. Mass. 2006). The Court does not have discretion.

Mr. Korotki is a professional gambler. However, the purpose behind Section 1112(b)(4)(A) is "preventing the debtor in possession from gambling on the enterprises at the creditors' expense when there is no hope of rehabilitation." *In re Lizeric Realty Corp.*, 188 B.R. 499, 563 (Bankr. S.D.N.Y. 1995).

Courts consider the following factors in determining whether the appointment of a trustee is appropriate: (1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for the debtor's rehabilitation; (3) the confidence or lack thereof of the business community and of creditors in the present management; and (4) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment. *See In re Cajun Elec. Power Co-Op, Inc.*, 1991 B.R. 659, 661-62 (M.D. La. 1995), *aff'd*, 74 F.3d 599 (5th Cir.), *cert. denied*, 117 S.Ct. 51 (1996). Application of each of these factors weigh heavily in favor of conversion.

In these cases, it is clear that with only 22 lots in its possession and no financing, the Reserves is not being rehabilitated. At the same time, Debtors are accruing administrative expenses and debt (without the Court's approval). Additionally, the Debtors are heavily engaged in litigation in state courts. The appointed trustee will bring an objective view and independent judgment as to whether there is any benefit from continuing with the litigation.

In addition to the absence of rehabilitation, Debtors are plagued by mismanagement. The numerous transfers without consideration are identified above. Without converting the cases and appointing a trustee, there will be no independent investigation of, and possible challenge to, the transfers. Also, Debtors are parties to multiple litigations. These also require a review by an independent party. The Court notes that thus far, Debtors have not fared well in such actions. Similarly, Mrs. Korotki's involvement is suspect and the trustee will be able to investigate the transfers between Mrs. Korotki and Debtors.

The Court's decision to convert these cases is in no small measure the result of Mr. Korotki's conduct. He showed an absence of respect for Chapter 11's requirements by borrowing funds without the Court's approval and treating income as his own rather than accounting for such income and depositing it in the proper debtor-in-possession account. Additionally, Mr. Korotki's testimony at the Hearing troubled the Court. As an attorney and sophisticated businessman, Mr. Korotki's testimony was evasive and non-responsive to questions. The Court concluded that Mr. Korotki was not a credible witness. The significance of the Court's conclusion that Mr. Korotki is not credible is that it supports the conclusion that Mr. Korotki cannot be trusted to investigate let alone pursue potential causes of action.

## CONCLUSION

For the foregoing reasons, the Court will issue an Order converting these cases from Chapter 11 to Chapter 7.

Dated: July 12, 2013

KEVIN GROSS, U.S.B.J.